IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC 23-399 |
| | * | |
| MATTHEW MEADE MOLNAR, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | ******* | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The Government submits this memorandum in anticipation of the sentencing of the defendant, Matthew Meade Molnar (the "Defendant"). The Court has set sentencing for **Friday, May 24 at 2:30 p.m.**[1] The Government respectfully requests that the Court sentence the Defendant to **360 months of incarceration, to be followed by a term of supervised release of 180 months**. The Government believes that this recommended sentence is sufficient, but not greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553.

The Government also seeks restitution in the amount of $9,000 and asks the Court to impose a $100 special assessment fee. Lastly, the Government asks the Court to enter the motion for the preliminary order of forfeiture. ECF No. 16.

### Background

**I.    Procedural Background**

On November 8, 2023, the Defendant was charged via information with one count of production of child pornography. ECF No. 1. On November 28, 2023, the Defendant pled guilty pursuant to a plea agreement to the single count in the information. ECF No. 6. In the plea agreement, the parties agreed that the Stipulation of Facts established that the Defendant

---

[1] The Government does not anticipate calling any witnesses at the sentencing hearing.

1

committed two counts of production of child pornography, and one count of distribution of child pornography and that relevant Guidelines calculations should apply all those counts. ECF No. 7.

## II. Statement of Facts

In the Plea Agreement, the parties stipulated and agreed that, if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. *See* ECF No. 7-1.

At all relevant times, the Defendant, **MATTHEW MEADE MOLNAR ("MOLNAR")**, was a resident of Hagerstown, Maryland. On June 29, 2015, **MOLNAR** was convicted in the Circuit Court for Washington County, Maryland, of (1) one count of promotion and possession with intent to distribute child pornography, and (2) one count of possession of child pornography. He was sentenced to ten years in prison with all but three years and six months suspended.

Minor Victim 1 ("MV1")

In February 2022, **MOLNAR** began to communicate with MV1, a 13-year-old girl located in the District of Maryland, through Omegle, a public chat website that enables users to virtually connect with strangers around the world. **MOLNAR** told MV1 that he was 37 years old, and MV1 told **MOLNAR** that she was 13 years old. **MOLNAR** exchanged sexually explicit messages with MV1, and eventually **MOLNAR** participated in a video call on Omegle with MV1, during which **MOLNAR** and MV1 watched each other masturbate.

**MOLNAR** then began to communicate with MV1 through the social media application Snapchat. In Snapchat messages, **MOLNAR** detailed what he and MV1 would do sexually to each other. In addition, **MOLNAR** sent photos and videos to MV1, including images of **MOLNAR**'s face and of **MOLNAR's** penis, and **MOLNAR** received from MV1 nude photographs and videos of MV1's genitals and bare breast.

**MOLNAR** arranged to meet MV1 to have sex. Specifically, **MOLNAR** falsely told MV1 that he was traveling from Florida to meet MV1 in Prince George's County, Maryland.

On or about February 22, 2022, **MOLNAR** met MV1 in **MOLNAR**'s SUV near MV1's residence in Maryland. Once MV1 was inside the SUV, **MOLNAR** exposed his penis, at which time MV1 performed fellatio on **MOLNAR** while **MOLNAR** touched MV1's genitals. **MOLNAR** then had sexual intercourse with MV1 in **MOLNAR**'s SUV. **MOLNAR** met MV1 inside MV1's residence in Maryland, on approximately three other occasions in February 2022 to engage in sexual intercourse with MV1.

After meeting with MV1, **MOLNAR** communicated with MV1 regarding sexual contact that had occurred in **MOLNAR**'s vehicle and MV1's residence. For example, on or about March 12, 2022, **MOLNAR** and MV1 exchanged a series of messages through the online messaging platform Discord. During that conversation, **MOLNAR** said that MV1 appeared to be "so nervous." Later in the conversation, MV1 asked **MOLNAR**, "Is it ok to say i lost my virginity on

wednesday?  Tuesday was just some quick pecks to get it done quickly  At least that's how I saw it." **MOLNAR** replied, "yeah I wasn't going to last much longer you felt so wet in the car."

On August 19, 2022, law enforcement executed a search warrant at **MOLNAR**'s residence in Hagerstown, Maryland, and seized **MOLNAR**'s electronic devices.  Among other items, law enforcement recovered an HP Z44 Desktop Computer, an Apple iPad (the "iPad"), a Nokia cellphone in a red and black case, and an Apple iPhone in a black Otter case, which contained hundreds of files of child pornography, including more than 260 videos constituting child pornography, as defined by 18 U.S.C. § 2256(8).  A review of the electronic devices, including the iPad, revealed homemade videos that **MOLNAR** had produced depicting sexually explicit conduct involving MV1.  **MOLNAR** produced at least 7 files constituting child pornography that depicted MV1, including the following files created on or about February 23, 2022:

- A file beginning "1DD60DA7":  This is a color video, approximately 1 minute 5 seconds in length. The video depicts MV1 laying on her back, completely naked while she is digitally penetrated in her vagina. **MOLNAR** states, "Say I'm daddy's good little girl." MV1 responds, "I'm daddy's good little girl. I love you daddy."  **MOLNAR** responds, "I love you too baby girl." **MOLNAR** continues to digitally penetrate MV1 throughout the video.

- A file beginning "E5DE0E39":  This is a color video, approximately 57 seconds in length. The video depicts MV1 laying on her back on an apparent bed, naked except for a pair of socks.  **MOLNAR** is standing on the side of the bed and the MV1's head is hanging off the edge.  MV1 is being digitally penetrated in her vagina.  **MOLNAR** inserts his penis into the mouth of MV1 while standing over her.  **MOLNAR** continues to digitally penetrate MV1's vagina.

- A file beginning "52D71031""  This is a color video, approximately 1 minute 46 seconds in length. The video depicts MV1 naked and giving oral sex to **MOLNAR**.  **MOLNAR** is laying on his back and MV1 is on her knees between his legs, gripping his penis. As MV1 is giving oral sex to the adult male, **MOLNAR** states, "Suck that cock you fucking good little 13 year old. Suck Daddy's horny cock baby."  **MOLNAR** asks MV1, "You like sucking Daddy's cock? You like Daddy fucking that little 13-year-old mouth?", to which MV1 replies "Mhmm." **MOLNAR** instructs MV1 to say "I love sucking your cock Daddy", which MV1 does.  **MOLNAR** then states, "Love me fucking that little 13-year-old pussy?" and "Do you like being my good little 8th grade slut?"

Each of the videos described above is a visual depiction of sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

**MOLNAR** produced additional videos and images of MV1 naked and of **MOLNAR** engaging in sexual conduct with MV1.

3

Minor Victim 2 ("MV 2")

Review of **MOLNAR**'s electronic devices further revealed that, between in or about 2020 and 2021, **MOLNAR** exchanged Snapchat messages and other communications with MV2, a female minor located in Florida. **MOLNAR** employed, used, persuaded, induced, enticed, and coerced MV2 to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. At all relevant times, MV2 was 15 and 16 years old. In one exchange, that occurred on September 27, 2020, **MOLNAR** messaged MV2 that he "want[ed] to suck on [MV2's] nipples"; "suck and lick them for as long as [MV2] could handle it"; or he would "suck on [MV2's] pussy." During the course of their communication, MV2 sent **MOLNAR** sexually explicit videos, including videos that constitute a lascivious exhibition of the genitals or pubic area of MV2, on Snapchat. **MOLNAR** then recorded and saved those videos on a separate device. Videos recovered from **MOLNAR**'s iPad depicting MV2 include the following:

- A file ending "3711": This is a color video, approximately 33 seconds in length. The video depicts a phone showing a Snapchat account. There are three videos opened in the Snapchat account. In each video, MV2 is inserting an object into her vagina repeatedly.

- A file ending "3765": This is a color video, approximately 46 seconds in length. The video depicts a phone showing a Snapchat account. There are four videos opened in the Snapchat account. In each video, MV2 is rubbing and inserting her fingers into her vagina repeatedly. The individual receiving the video—that is, **MOLNAR**—sends a message instructing "Now go in fast and pull out slow" to MV2.

The creation date of these files was July 20, 2020, when MV2 was 15 years old. Each video is a visual depiction of sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

On his iPad, **MOLNAR** had saved MV2 as a contact and included her residential street address in the contact information.

In May 2021, **MOLNAR** traveled to MV2's hometown to visit her. During his trip, they took a "selfie" image together. In conversations prior to visiting MV2, **MOLNAR** falsely told MV2 that he was 17 years old and was studying pre-law. In fact, **MOLNAR** was 44 years old at the time. Before visiting MV2, **MOLNAR** sent MV2 a Bible, clothing and a coffee mug.

After **MOLNAR** left MV2's hometown, MV2 deleted all of her social media accounts and stopped communicating with **MOLNAR**. MV2 later told law enforcement that her conversations with **MOLNAR** made her uncomfortable and that **MOLNAR** tried to manipulate her to keep talking to him.

Distribution of Child Pornography

Based on a review of **MOLNAR**'s electronic devices, **MOLNAR** also distributed material containing child pornography, as defined by 18 U.S.C. § 2256(8). For example, in online chats through the social media platform Kik, **MOLNAR** distributed numerous files containing child pornography including the following:

4

- A file beginning "5f6a9eed":  This is a color video, approximately nine (9) seconds in length. The video depicts a prepubescent female, naked, rubbing her genitals and grabbing her breast.

**MOLNAR** distributed child pornography material in exchange for valuable consideration, specifically in exchange for other files that contained child pornography.  The files that **MOLNAR** received included the following, which he received on Kik:

- A file beginning "d8af2449-616f":  This is a color video, approximately 56 seconds in length. The video depicts a prepubescent female sitting on a bathroom floor naked with her legs spread apart to expose her genitals. The minor female is penetrating her vagina with what appears to be a toothbrush. The minor female's genitals are devoid of pubic hair and has underdeveloped breasts. The minor female inserts the object into her anus.

Through his enticement and production of child pornography of MV1 and MV2, **MOLNAR** engaged in a pattern of activity involving the sexual abuse and exploitation of a minor and a pattern of activity involving prohibited sexual conduct.  The electronic devices seized from **MOLNAR**'s residence that **MOLNAR** used to produce, save, store, distribute, and receive child pornography were not manufactured in the State.

## STATUTORY SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007).  After calculating the range, it must consider the § 3553(a) factors before imposing the sentence.  *Id.* at 49-50.

The statutory factors for the Court's consideration under 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and history and characteristics of the defendant and (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public and provide the defendant with needed services.  "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4; *see also* 18 U.S.C. § 3661.  "If the district court

decides to impose a sentence outside the guidelines range, it must ensure that its justification supports 'the degree of the variance.'" *United States v. Evans,* 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Gall,* 552 U.S. at 51). The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances. *United States v. Green,* 436 F.3d 449, 456-57 (4th Cir. 2006); *United States v. Moreland,* 437 F.3d 424, 433 (4th Cir. 2006).

I. **The Defendant's Total Offense Level is 43 and His Criminal History Category is II, Resulting in a Guidelines Range of Life.**

*Total Offense Level:*  The Government agrees with the Presentence Report that the Defendant's adjusted total offense level is 43. PSR ¶¶ 31-64.

*Criminal History Category:*  The Government agrees with the Presentence Report that the Defendant's criminal history category is II. PSR ¶¶ 66-70.

*Guidelines Range:*  With an adjusted offense level of 43 and a criminal history category of II, the advisory Guidelines range is a life term of imprisonment.

II. **Section 3553(a) Sentencing Factors**

The Government respectfully submits that a sentence of 360 months of incarceration, to be followed by a term of supervised release of 180 months, will be sufficient, but not greater than necessary in light of the relevant § 3553(a) factors.

A. **Nature & Circumstances of the Offense**

This factor supports a long sentence because the Defendant committed a series of horrendous crimes against one of the most vulnerable populations in society, children.

The Government has identified two separate hands-on victims of the Defendant.

*First*, in 2020 or 2021, the Defendant started communicating with MV2, who was a 15-16 year-old girl at the time. He sent her sexually explicit messages, including that he "want[ed] to suck on [MV2's] nipples"; "suck and lick them for as long as [MV2] could handle it"; or he would

"suck on [MV2's] pussy." These statements enticed MV2 to send the Defendant sexually explicit videos, including those of her vagina. In one video, the Defendant was coaching her, saying, "Now go in fast and pull out slow." The Defendant traveled to MV2's hometown in May 2021, presumably to rape her, but was thwarted because MV2's parents intervened.

Although MV2 does not intend to write a victim impact statement or address the Court at sentencing, she previously told law enforcement that her conversations with the Defendant made her uncomfortable.

*Second*, in February 2022, the Defendant took advantage of MV1 who was then a thirteen year-old girl. He sent her sexually explicit messages and convinced her to let him come to her house. Then, on three separate occasions in February 2022, he raped her.

In addition to these hands-on crimes, the Defendant exchanged child sex abuse materials with others. As the Supreme Court has explained, "Child pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). The demand for child pornography drives production, which necessarily involve child abuse. *Paroline v. United States*, 134 S. Ct. 1710, 1717 (2014). Beyond the child abuse, "child pornography is a permanent record of the depicted child's abuse, and the harm to the child is exacerbated by its circulation." *Id.*; *see also United States v. Blinkinsop,* 606 F.3d 1110, 1118 (9th Cir. 2010) ("[t]he children involved in pictorial and cinematic pornography additionally endure ongoing harm because their images have been preserved in a permanent medium"); *United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("children depicted in the pornography suffer a direct and primary emotional harm when another person possesses, receives or distributes the material"). As the Seventh Circuit noted in *United States v. Shutic*, "children . . . suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret . . . concern

for the welfare of the children who are used to create pornography is part of the public concern over child pornography." 274 F.3d 1123, 1126 (7th Cir. 2001).  Courts have recognized that even a "'passive' consumer who merely receives or possesses the images directly contributes to this continuing victimization."  *Sherman,* 268 F.3d at 545.  "Indeed, one of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted."  *Id*. at 547. Sadly, the Defendant was not a "mere possessor," but instead a distributor of child pornography as well.

The National Center for Missing & Exploited Children ("NCMEC") analyzed the files that law enforcement found on the devices seized during the execution of the residential search warrant and found that he possessed 63 images and 40 videos of child sex abuse material.  Ex. A.

The Government received nine Victim Impact Statements in this case.  Ex. B (Ali Victim Impact Statement), Ex. C (Dalmations (C) Victim Impact Statement), Ex. D (Dalmations (Ke) Victim Impact Statement), Ex. E (Dalmations (Ky) Victim Impact Statement), Ex. F (DJMW Victim Impact Statement), Ex. G (Jenny Victim Impact Statement), Ex. H (Maria Victim Impact Statement), Ex. I (Sparkling Velvet Victim Impact Statement), Ex. J (Sparkling Velvet Restitution Request), Ex. K (Tara Victim Impact Statement).  The Victim Impact Statements explain how the victims continue to suffer knowing that individuals are circulating documentation of their abuse. Here are just a few relevant snippets:

- "The ongoing harm of what happened to me impacts me every single day. I cry multiple times a day and it's exhausting. I feel like everything in life in pointless. I am just existing." Ex. B (Ali Victim Impact Statement).
- "It makes me feel embarrassed and I don't like people having me on the internet."  Ex. C (Dalmations (Ke) Victim Impact Statement).

Case 8:23-cr-00399-TDC   Document 17   Filed 05/09/24   Page 9 of 12

- "The fact that this video is on the internet and cannot be stopped is an ongoing abuse that will impact her life and wellbeing for the foreseeable future." Ex. F (DJMW Victim Impact Statement).
- "The knowledge that the videos and photos are out there make me so sick and I just think: How can someone be so horrible that they find pleasure in someone else's pain? In MY pain?" Ex. I (SparklingVelvet Victim Impact Statement).

Because the Defendant has harmed so many people the Court should impose a long sentence.

### B. History and Characteristics of the Defendant

This factor supports a long sentence. The Defendant proved himself to be an unrepentant child predator. In 2013, law enforcement executed a search warrant and found that the Defendant was possessing multiple videos of young female victims. PSR ¶ 70. Based on this conduct, the Defendant pled guilty to two counts of possession of child pornography and was sentenced to 10 years of incarceration with 6 years and 6 months suspended. PSR ¶ 70. He was released on March 1, 2017, and his probation expired on March 2, 2020. PSR ¶ 70. Because of his criminal history, Congress has set the statutory minimum for his conviction at 300 months.

But the Court should impose more than the statutory minimum in this case. Within a few years of his probation ending, the Defendant began again preying on young girls and engaging in hands-on contact.

### C. Respect for the Law, Deterrence, and Public Safety

This factor supports a long sentence. As described above, the nature and circumstances of the offense are extremely serious and require a sentence that promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, and protects the public from further crimes of the Defendant. The Defendant's prior state sentence did not deter him from continuing to commit crimes.

From a general deterrence perspective, a long prison sentence will signal that the criminal justice system will not tolerate citizens continuing to engage in child exploitation.

### III.     SUPERVISED RELEASE

The Government also seeks the imposition of a 180-month term of supervised release, which will ensure that the Defendant can reintegrate into society post-incarceration. The Government agrees with all of the Additional Recommended Conditions of Supervision listed in the PSR.

The Defendant is now a repeat criminal offender and will need a lengthy period of mental health treatment and sex offense-specific treatment program to ensure that he does not commit crimes in the future. Specifically, this treatment will reduce the risk that the Defendant relapses into pursuing his sexual interest in children. Having access to a probation officer will help ensure that he finds a job and remains employed after release.

### IV.     RESTITUTION

The Government also respectfully requests that the Court order restitution in the amount of $9,000. In this plea agreement, the Defendant agreed "to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 2259, 3663 and 3663A, and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total losses caused by the offense conduct set forth in the factual stipulation. The Defendant agrees that, with respect to each victim, pursuant to 18 U.S.C. § 2259(b), the Court shall

order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." ECF No. 7, ¶ 20.

The Government did not receive restitution requests from MV1 or MV2.

As of the date of this sentencing memorandum, the Government has received restitution requests for three victims[2] who were files found on the Defendant's devices that meet the definition of child pornography under 18 U.S.C. § 2256(8).

Ali is requesting $5,000 while SparklingVelvet is requesting $3,000. DJMW mentioned in the victim impact statement a request for restitution related to ongoing treatment, but did not provide any information about costs to date.

The Government believes that $3,000 per victim is appropriate here. *See* 18 U.S.C. § 2259(b)(2)(B). The Defendant had a minimal individual role in "the broader causal process that produced the victim's losses." *Paroline v. United States*, 572 U.S. 434, 459 (2014). The Defendant did not "reproduce[] or distribut[] images" of these particular victims; the Defendant did not "ha[ve] any connection to the initial production of the images." *Id.* at 460. The Defendant possessed 2 files depicting Ali (who was a victim of the ZooFamily series), 2 files depicting SparklingVelvet, and 2 files depicting DJMW (who was a victim of the Mother Full 20121 series). Per the plea agreement, the Government respectfully requests that the Court order the restitution to be paid immediately. The Government will provide a restitution worksheet to the Court at sentencing.

V.     **SPECIAL ASSESSMENT**

The Government respectfully requests that the Court order the Defendant to pay a $100 mandatory special assessment fee.

---

[2] Those victims are Ali, DJMW, and SparklingVelvet.

## VI.     FORFEITURE

The Government respectfully requests that the Court incorporate the motion for forfeiture of property and preliminary order of forfeiture, filed on April 25, 2024, (ECF No. 16), into its judgment at sentencing.

## **CONCLUSION**

For the foregoing reasons, and any additional information that may be presented at the sentencing hearing, the Government respectfully requests that the Court impose a term of imprisonment of **360 months of incarceration, to be followed by a term of supervised release of 180 months**.

                                            Respectfully Submitted,

                                            Erek L. Barron
                                            United States Attorney

By:     _____/s/_____
                                            Christopher M. Sarma
                                            Assistant United States Attorney